IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TERRY WAGNER (#R-07282),

        Plaintiff,

v.

WARDEN TERRY McCANN, *et al.*,

        Defendants.

Case No. 10 C 2160

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiff, Terry Wagner (the "Plaintiff"), a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The Plaintiff claims that the Defendants, correctional officials and health care providers at the Stateville Correctional Center, have violated the Plaintiff's constitutional rights by acting with deliberate indifference to his serious medical needs. More specifically, the Plaintiff claims that he has received inadequate care and treatment for his chronic rashes, resulting in unnecessary pain and suffering. This matter is before the court for ruling on Defendants Anthony Ramos' and Allen Karraker's Motions to Dismiss the Amended Complaint for failure to state a claim. For the reasons stated herein, Anthony Ramos' Motion to Dismiss is denied and Allen Karraker's Motion to Dismiss is granted.

## I. **LEGAL STANDARD**

It is well established that *pro se* complaints are to be liberally construed. *Kaba v. Stepp*, 458 F.3d 678, 681, 687 (7th Cir. 2006). *Pro se* submissions are held to a less stringent standard than formal pleadings drafted by lawyers. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)); *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 667 (7th Cir. 2008).

To satisfy the notice pleading requirements of FED. R. CIV. P. 8(a)(2), the plaintiff must only state his basic legal claim and provide "some indication . . . of time and place." *Thompson v. Washington*, 362 F.3d 969, 971 (7th Cir. 2004). In addition, when considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court assumes all factual allegations in the complaint to be true, viewing all facts-as well as any inferences reasonably drawn therefrom – in the light most favorable to the plaintiff. *Parish v. City of*

*Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010); *Bell Atlantic Corp.*, 550 U.S. at 563 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). A well-pleaded complaint may proceed even if it appears "that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atlantic Corp.*, 550 U.S. at 556.

Nevertheless, the factual allegations in the complaint must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp.*, 550 U.S. at 555. While a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp.*, 550 U.S. at 555 (citations omitted). The court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). "The complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010)(citing *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009)). Furthermore, a plaintiff can plead himself or

herself out of court by pleading facts that undermine the allegations set forth in the complaint. *See, e.g., Whitlock v. Brown*, 596 F.3d 406, 412 (7th Cir. 2010)(citations omitted): "A judicial admission trumps evidence. This is the basis of the principle that a plaintiff can plead himself out of court."

## II. <u>FACTS</u>

The Plaintiff alleges the following facts relative to the movants and assumed true for purposes of the motions to dismiss:

The Plaintiff is an Illinois state prisoner, confined at the Stateville Correctional Center at all times relevant to this action. (Amended Complaint, p. 2, ¶ 5.) Defendant Anthony Ramos ("Ramos") was the facility's warden at the time of some of the events giving rise to this action. (*Id.*, ¶ 7.) Defendant Alex Karraker ("Karraker") is a supervisor for Wexford Health Sources, Inc., which employs individuals to work at Stateville and other correctional facilities. (*Id.*, ¶ 10.)

In April of 2006, the Plaintiff developed a rash on his body. (Amended Complaint, ¶ 23.) A staff physician (Defendant Tilden, who has not joined the motions to dismiss) prescribed the Plaintiff Tolnaftate ointment. According to [www.wikipedia.org](www.wikipedia.org), Tolnaftate is an antifungal medication designed to control skin infections. (*Id.*, ¶ 24.)

On June 5, 2006, the Plaintiff returned to the health care unit, reporting that the rash had spread to his face. (*Id.*, ¶ 25.) Defendant Tilden prescribed additional medications. (*Id.*, ¶ 26.)

The Plaintiff returned to the health care unit later that month and received additional medication. (*Id.*, ¶ 26.)

On September 21, 2006, more medication was prescribed. (*Id.*, ¶ 27.) Stateville physicians refused, however, to refer the plaintiff to an outside specialist. (*Ibid.*)

On December 20, 2006, the Plaintiff had a consultation with another physician, Defendant Ghosh ("Ghosh")(also a non-movant). (*Id.*, ¶ 28.) Ghosh found that the skin rash was "chronic" and warm to the touch. (*Ibid.*) The Plaintiff was once again given Tolnaftate, even though it had not alleviated the problem during the first course of treatment. (*Ibid.*)

On April 1, 2007, the Plaintiff filed a grievance regarding the perceived deficiencies in the medical care he was receiving. (*Id.*, ¶ 13.) The grievance was ultimately denied. (Amended Complaint, ¶ 34.)

On June 14, 2008, Ghosh issued the Plaintiff a medical pass; however, the facility was on "lockdown" at the time. (*Id.*, ¶ 35.)

On June 25, 2008, the Plaintiff had a consultation with Ghosh. (*Id.*, ¶ 36.) Ghosh promised the Plaintiff that he was sending him to see an outside specialist. (*Ibid.*) However, the Plaintiff was not taken to see an outside physician. (*Ibid.*)

On July 27, 2008, the Plaintiff wrote a letter to Ghosh requesting a renewal of his medical shower permit. (*Id.*, ¶ 37.) Ghosh did not respond to the letter. (*Ibid.*)

On July 30, 2008, the Plaintiff wrote to Ghosh again, worried that his rashes would recur if the medical permit were not renewed. (*Id.*, ¶ 38.)

On August 4, 2008, the Plaintiff wrote Ghosh again, complaining that he was "itching all over his body." (*Id.*, ¶ 39.) Ghosh did not respond to the letter or issue a pass to the health care unit. (*Ibid.*)

On August 8, 2008, the Plaintiff wrote Ghosh once again. (*Id.*, ¶ 40.) The Plaintiff advised Ghosh that the rashes had returned and that his face and back felt as if they were "on fire." (*Ibid.*) Ghosh still failed to take any action. (*Ibid.*)

In September 2008, the Plaintiff was finally given a medical shower permit and new medication, both of which apparently alleviated his condition over the next year. (*Id.*, ¶ 42.)

On September 4, 2008, the Plaintiff wrote a letter to Wexford Health Sources, Inc., advising the company, too, that he was "suffering" and that his face and back felt on fire.

On September 15, 2009, after learning that inmates were forging medical shower permits, Ramos stopped all medical showers without making any case-by-case determinations. (*Id.*, ¶ 43.)

On September 30, 2009, Plaintiff wrote to Ramos to apprise the warden of his condition and explain why he needed medical showers. (*Id.*, ¶ 44.) In response, Ramos assured the Plaintiff that he would be seen by Ghosh for a re-evaluation. (*Id.*, ¶ 45.)

On October 7, 2009, the Plaintiff wrote to Ghosh, asking for an expedited evaluation because he was "itching and scratching." (*Id.*, ¶ 42.) The letter produced no results. (*Ibid.*)

On October 15, 2009, the Plaintiff wrote a second letter to Ramos. (*Id.*, ¶ 47.) The Plaintiff advised Ramos, "I haven't been evaluated and I'm suffering here, sir, [so] I would really appreciate your assistance in this matter." (*Ibid.*)

On October 16, 2009, the Plaintiff wrote to Ghosh again, alerting the doctor that his back, chest and face once again felt "on fire." (*Id.*, ¶ 48.)

On October 22, 2009, the Plaintiff filed another grievance regarding his medical care. (*Id.*, ¶ 50.) The Plaintiff also

sent letters to Ghosh and Ramos, both of whom "let the plaintiff suffer in pain." (*Ibid.*)  The grievance was ultimately denied. (*Id.*, ¶ 53.)

On November 17, 2009, the Plaintiff wrote a letter to Karraker about Ghosh's substandard care. (*Id.*, ¶ 51.)  Karraker did not act to ensure that the Plaintiff received adequate treatment. (*Ibid.*)

### III.  DISCUSSION

Accepting the Plaintiff's allegations as true, the Court concludes that his Amended Complaint states a viable claim of deliberate indifference with respect to Ramos.  However, Karraker must be dismissed for lack of direct, personal involvement.

#### A.  Personal Involvement of Warden Ramos

The Plaintiff has articulated a tenable Eighth Amendment claim against Ramos.  The Amended Complaint indicates that Ramos was personally and directly involved in the alleged denial of medical care; moreover, the Amended Complaint supports an inference that Ramos acted with deliberate indifference to the Plaintiff's serious medical needs.

Correctional officials and health care providers may not act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002).  The fact that a

prisoner received **some** medical treatment does not necessarily defeat his claim; deliberate indifference to a serious medical need can be manifested by "blatantly inappropriate" treatment, *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (emphasis in original), or by "woefully inadequate action," as well as by no action at all. *Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999); *Allen v. Wexford Health Sources, Inc.*, No. 11 C 3834, 2011 WL 2463544, *1 (N.D. Ill. Jun. 17, 2011)(Kocoras, J.).

A supervisory official may learn of a constitutional violation by way of a grievance, and may become personally involved by ignoring such grievances. *See Santiago v. Walls*, 599 F.3d 749, 758-59 (7th Cir. 2010); *see also Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009). While the doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983, *see, e.g., Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008), supervisors may not "turn a blind eye" to constitutional violations. *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010)(quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). Here, the Plaintiff filed a grievance and wrote several letters to Ramos explaining his predicament. Indeed, Ramos himself made the decision to halt medical showers in the first place, according to the Amended Complaint.

The Court recognizes that a warden is generally shielded from liability where a plaintiff is receiving ongoing care from health care professionals. *See, e.g., Johnson v. Snyder*, 444 F.3d 579, 586 (7th Cir. 2006)(fact that plaintiff's medical needs were being addressed by the medical staff insulated the warden from liability); *contrast Reed v. McBride*, 178 F.3d 849, 854-56 (7th Cir. 1999)(warden was required to act where officials allegedly denied an inmate life-sustaining medication and food). "The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Correctional officials may properly rely on the health care staff to assess an inmate's needs and to provide appropriate care and treatment.

However, in the case at bar, the Plaintiff contends that he was not being seen by health care providers and that a skin rash that made him feel as if he were "on fire" was going virtually untreated. Where, as here, the Plaintiff informed the warden that he was being denied access to the health care unit, the warden may be liable under 42 U.S.C. § 1983 for his purported inaction.

As the court noted in its Memorandum Opinion and Order of June 27, 2011, at this stage of the proceedings, the Court has

made no conclusive determination as to either whether the Plaintiff's medical condition was "serious" for purposes of Eighth Amendment analysis, or whether the medical care he received was constitutionally adequate. At this time, bearing in mind that the Plaintiff's allegations must be accepted as true, the Court finds only that the Plaintiff has alleged sufficient facts to proceed against the warden. If discovery should reveal that the Plaintiff's allegations against the warden are not well-founded, Ramos may promptly move for summary judgment. But Ramos' Motion to Dismiss the amended complaint for failure to state a claim is denied.

**B. Personal Involvement of Wexford Staff Member Karraker**

Nevertheless, the Plaintiff's claim against Karraker is too attenuated for liability under 42 U.S.C. § 1983 to attach. As noted, *supra*, the doctrine of *respondeat superior* does not apply to actions filed under 42 U.S.C. § 1983. *Kinslow,* 538 F.3d at 692. Section 1983 does not create collective or vicarious responsibility. *Id.* Supervisors cannot be held liable for the errors of their subordinates. *Birch v. Jones*, No. 02 C 2094, 2004 WL 2125416, at *6 (N.D. Ill. Sep. 22, 2004)(Manning, J.), *citing Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). To be held liable under 42 U.S.C. § 1983, supervisors "must know about the conduct and facilitate it, approve it, condone it, or

turn a blind eye for fear of what they might see." *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010)(quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery. *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003).

By Minute Order of September 21, 2010, the Court summarily dismissed Wexford Health Sources, Inc., and its Chief Executive Officer on preliminary review pursuant to 28 U.S.C. § 1915A, noting that complaint letters to corporate headquarters were insufficient to establish liability on the part of Wexford or its CEO. For the same reasons, there is no arguable basis for suit against Wexford's regional administrator. Any problems the Plaintiff experienced are attributable to Stateville personnel, not corporate higher-ups.

A private corporation can be held liable under Section 1983 for its employees' constitutional violations only if an official corporate policy caused the violation. *See, e.g., Woodward v. Correctional Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). The Plaintiff has no cognizable claim against Karraker, who was too far removed from day-to-day, individual prisoner medical care to be responsible for the Plaintiff's

medical care. *Compare Gray v. Taylor*, 714 F.Supp.2d 903, 911 (N.D. Ill. 2010)(Bucklo, J.) (no claim against IDOC's director because "administrators cannot be expected to involve themselves with the minutiae of daily events in the lives of thousands of prisoners")(citations omitted); *see also Smith v. Harvey*, No. 08 C 0816, 2010 WL 1292473, *5 (N.D. Ill. Mar. 29, 2010)(Manning, J.)(a senior official's receipt of a complaint about a subordinate, without more, does not make the senior official personally liable). Because a single letter to Karraker is insufficient for personal liability to attach, Karraker's Motion to Dismiss is granted.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, Defendant Ramos' Motion to Dismiss [#90] is denied. Warden Ramos is directed to answer or otherwise plead within twenty-one days of the date of this order. Defendant Karraker's Motion to Dismiss [#80] is granted. Alex Karraker is dismissed as a defendant pursuant to Fed. R. Civ. P. 12(b)(6).

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** 7/27/2011